IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROSEMARY WALLER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:12–CV–63 |
| ) | |
| CAROLYN W. COLVIN[1], Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rosemary Waller ("Waller") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Waller alleges that the administrative law judge ("ALJ") failed to properly consider her obesity, improperly evaluated the medical evidence, and improperly discredited her subjective complaints of pain.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's analysis on all grounds. As such, I **RECOMMEND DENYING** Waller's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Waller failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Furthermore, Waller bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five–step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–462 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Waller was born on October 2, 1958 (Administrative Record, hereinafter "R." at 27), and is considered a person closely approaching advanced age under the Act.  R. 55; 20 C.F.R. § 404.1563(d).  Waller is insured through March 31, 2014 (R. 189); therefore she must show that her disability began before the end of her insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).  Waller has a tenth grade education. R. 28.  Waller was most recently employed as a machine operator, from June 1996 to December 2012, which is classified as semi–skilled work at the sedentary level.  R. 39–40.  Waller also worked as a production worker from May 2009 to June 2009 (sedentary, unskilled work), and as an order filler from January 1992 to July 1996 (light, unskilled work). R. 39–40.  Waller reported that, during the relevant period, she had the capacity to get her granddaughter up, fix her granddaughter's meals, drive her granddaughter to

school, go grocery shopping once every two weeks, attend doctor appointments, do laundry, watch television, lift ten pounds, and pick up around the house. R. 34–35, 173–179.

## Claim History

Waller protectively filed for DIB on November 18, 2010, claiming that her disability began on June 9, 2009. R. 133–34. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 68–72, 76. On March 6, 2012, ALJ Marc Mates held a hearing to consider Waller's disability claim. R. 23–42. Waller was represented by an attorney at the hearing, which included testimony from Waller and vocational expert Steven Hensely, Ed. D. R. 39–42.

On March 29, 2012, the ALJ entered his decision denying Waller's claims. R. 7–22. The ALJ found that Waller suffered from the severe impairments of degenerative disc disease, fibromyalgia, and obesity. R. 12. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Waller retained the RFC to perform light work, with the following limitations: (1) occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; (2) no climbing ladders, ropes, and scaffolds; and, (3) avoiding concentrated exposure to vibration and workplace hazards. R. 15. The ALJ determined that Waller could return to her past relevant work as an order filler or production worker. R. 21. Thus, the ALJ concluded that she was not disabled. R. 22. On September 26, 2012, the Appeals Council denied Waller's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Waller alleges that the ALJ erred by 1) failing to properly evaluate the functional effects of her obesity; 2) finding her fecal incontinence, urinary incontinence, left knee and left foot

4

complaints to be non-severe impairments; and 2) discrediting her subjective complaints of pain. Waller's appeal essentially asks the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision denying Waller's claims, and recommend that it be affirmed.

### **Obesity**

Waller argues that the ALJ failed to properly consider the impact of her obesity upon her residual functional capacity. Specifically, Waller claims that her obesity exacerbates her degenerative disc disease and fibromyalgia, and further restricts her ability to sit, stand, and walk. The regulations require the ALJ to consider the combined effects of obesity with other impairments and to consider the effects of obesity at steps two through five of the sequential disability evaluation. Social Security Ruling ("SSR") 02-1p, 2000 WL 628049; Greenway v. Astrue, 6:12cv00005, 2013 WL 4929931 at *6–*7 (W.D. Va. Sept. 13, 2013); see also Barr v. Astrue, 5:10cv00074, 2011 WL 3420844, at *5–*6 (W.D. Va. Aug. 4, 2011). There is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, 6:11CV00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted). Rather, courts have found that the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Id. See also Martin v. Barnhart, 5:10CV00102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue,

5

5:10CV00102, 2012 WL 994903 (W.D. Va. Mar. 23, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony and took note of the medical opinions of record regarding her weight).

Furthermore, to challenge an ALJ's obesity analysis, the claimant must advance additional, obesity–related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Waller must provide medical evidence establishing functional limitations caused by her obesity that are not addressed in the RFC. Richards, 2012 WL 5465499, at *13. See also Barr v. Astrue, 510cv00074, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011) (finding that the plaintiff's high BMI did not obligate the ALJ to include a more detailed analysis in the RFC determination).

In this case, the ALJ properly considered and accounted for Waller's obesity. The ALJ expressly noted Waller's obesity and/or height and weight at steps two, three and four of his sequential analysis. R. 12, 14, 15, 18. The ALJ concluded that Waller's obesity was a severe impairment. R. 12. The ALJ specifically noted that obesity may increase the severity of coexisting or related impairments and stated that he had therefore considered the cumulative effects of Waller's obesity. R. 14. He found that Waller's obesity, in combination with her degenerative disc disease and fibromyalgia, limited her mobility, ability to lift and carry heavy objects, ability to perform postural activities continuously, and ability to work in certain environments. R. 15.

Additionally, in determining Waller's RFC, the ALJ relied on the medical records of Drs. Leong, Joiner, and Torre, which note Waller's obesity. R. 16–17, 255, 277, 330. The ALJ also

relied upon the opinions of state agency physicians John Sadler, M.D., and Bert Spetzler, M.D., who each diagnosed Waller with obesity, but nonetheless concluded that she was capable of light work with certain postural limitations. R. 49–51, 61–64. The limitations imposed by the ALJ incorporate and are consistent with the RFC findings of Drs. Sadler and Spetzler. As the ALJ noted, no treating, examining, or reviewing medical source suggested that Waller is more limited than the ALJ's RFC. R. 20. Thus, the ALJ satisfied his duty to consider the cumulative effect of Waller's obesity, together with her other severe impairments.

Waller argues that the ALJ did not account for the fact that her obesity impacts her ability to sit, stand and walk. Pl. Br. 14–16. However, the ALJ acknowledged Waller's obesity, deemed it a severe impairment, and accounted for its impact on her functional capabilities by restricting Waller to a range of light work. The ALJ acknowledged that Waller's impairments limit her mobility and ability to perform postural activities continuously, and thus restricted Waller to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. R. 15. He found that Waller cannot climb ladders, ropes or scaffolds, and must avoid exposure to vibration or workplace hazards. R. 15. The ALJ relied upon the opinions of physicians who considered and accounted for the limitations caused by Waller's obesity. R. 16–19. The medical records do not demonstrate that Waller's obesity caused significant limitations in her work activities other than those identified by the ALJ and accounted for in his RFC. Thus, the ALJ properly accounted for the limitations arising from Waller's obesity in his RFC analysis, in accordance with SSR 02-1p.[2]

---

[2] The cases cited by Waller in support of her obesity arguments are easily distinguishable. In Davis v. Astrue, 7:09CV00200, 2010 WL 424144, at *5 (W.D. Va. February 3, 2010), "the Law Judge made absolutely no reference to plaintiff's marked obesity in his opinion adjudicating the claim for supplemental security income benefits." By contrast, the ALJ in this case specifically noted that he had considered the cumulative effects of Waller's obesity and relied upon the medical opinions of the state agency doctors, as suggested by Richards v. Astrue, 6:11cv17, 2012 WL 5465499, at * 6 (W.D. Va. July 5, 2012). Waller also cites Bradberry v. Astrue, 7:11cv235, 2011 WL 6296728, at *4 (W.D. Va. Dec. 15, 2011), which does not find that the ALJ failed to consider

**Severe Impairments**

Waller also contends that the ALJ erred in finding her fecal incontinence, urinary incontinence, left knee and left foot pain to be non-severe impairments. An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Waller bears the burden of proving that these impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

The ALJ acknowledged that Waller had the severe impairments of degenerative disc disease, fibromyalgia, and obesity. R. 12. However, he found that Waller's urinary and fecal incontinence were not severe because they "have not required significant follow-up and have not resulted in continuous exertional or non-exertional limitations." R. 13. Substantial evidence supports the ALJ's conclusion.

With regard to Waller's gastrointestinal issues, although Waller often complained of leakage and needing to use the restroom five to six times per day, she received little treatment for this condition. On April 7, 2011, gastroenterologist Vikas Chitnavis, M.D. performed an endoscopy on Waller and found a small hiatal hernia and some evidence of gastritis and

---

obesity, but instead holds that the ALJ erred by relying upon the plaintiff's failure to follow prescribed treatment for obesity to deny benefits. Id.

duodenitis. R. 334. Dr. Chitnavis noted that Waller's colonoscopy was normal. R. 335. He recommended Kegel exercises and weight loss. R. 335. At a follow up appointment on June 17, 2011, Dr. Chitnavis referred Waller for motility studies of her upper and lower gastrointestinal tracts, and prescribed Colsetid. R. 332. The records do not indicate that Waller received those scans, or that Waller received any additional treatment for these complaints.

Waller complained of urinary incontinence in November 2009 and December 2010, and she switched medications to address that issue in December 2010. R. 357, 363. There is no other evidence of treatment for urinary incontinence in the record. Thus, there is more than adequate support for the ALJ's conclusion that Waller's incontinence and gastrointestinal issues did not result in significant and continuous limitations on her ability to work.

Waller further argues that her left knee and left foot pain should have been found as severe impairments. Pl.'s Br. 17. While the ALJ did not specifically refer to impairments of left knee and foot pain, the ALJ determined that Waller's fibromyalgia and obesity were severe impairments, and discussed Waller's left knee and left foot pain at length in evaluating her RFC. R. 17, 19–20. The ALJ's analysis of the functional limitations caused by Waller's left knee and left foot pain was subsumed within his overall discussion of fibromyalgia and obesity. The medical evidence regarding Waller's knee and foot pain was fully considered by the ALJ, and aligned with his decision limiting her to light work with postural restrictions.

## Pain and Credibility

Waller argues that the ALJ erred by failing to assign substantial credibility to her testimony that she suffers from severe, disabling pain. At the administrative hearing, Waller testified that her neck, back, and arm pain were constant, and that she has severe muscle spasms that swell up her side. R. 28. Waller testified that she cannot walk, stand or sit more than a few

minutes. R. 32–33. She also testified that she is incontinent, and has to use the bathroom five or six times in a day. R. 31.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Waller's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Waller met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Waller's ability to work. Id. at 594-95.

In this case, the ALJ recognized that Waller suffers from severe impairments that cause her to experience pain. As the ALJ noted in his opinion, the issue is not whether Waller has pain, but whether that pain is so severe as to be disabling. The ALJ found that Waller's statements regarding disabling pain are not entirely credible and are not supported by the degree of medical treatment she received, the findings made on examination, and the reports of the reviewing, treating and examining physicians in the record. R. 20. The ALJ included a detailed analysis of Waller's treatment records in his opinion in support of this conclusion. R. 16–19.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's

determination that Waller's testimony regarding her disabling pain is only partially credible, and that Waller is capable of performing the range of light work set forth in the ALJ's opinion.

Waller's treatment records do not reflect a debilitating condition, but rather a condition that required conservative treatment and was controlled by medication. Waller's diagnostic tests evidence fairly minor findings of mild degenerative disc disease in her spine and left knee. R. 247–9, 302. On physical examinations, Waller had a full range of motion in her upper and lower extremities, no significant gait abnormalities, normal muscle strength, negative straight leg raise tests, and no neurological deficits. R. 252–53, 255–56, 258–65, 272–75, 313, 330. Waller received routine care form a primary care physician and physical medicine specialist, and her pain was treated conservatively with medication, epidural steroid injections, and recommendations for weight loss and increased physical activity. R. 211–13, 252–53, 255–56, 258–65, 268–70, 272–75, 313, 330, 332, 350. Additionally, no physician found that Waller's impairments prevent her from working or otherwise engaging in productive activity.

Waller's statements about her daily activities also undermine her complaints as to the severity of her pain. R. 34–35, 173–179. Waller reported that she can "pick up around the house, feed and water her dogs, prepare simple meals, wash laundry up to three times a week, clean dishes, vacuum, drive her granddaughter and herself places, go grocery shopping, pay bills, spend time with her family, visit her mother, and lift ten pounds. R. 173–179. Although these activities alone do not translate to an ability to work, taking all of them together paints a picture of a person who is not totally debilitated by pain. Therefore, Waller's credibility is undermined by the objective evidence, as well as her own statements about daily activity.

The ALJ does not assert that Waller is pain free. On the contrary, the ALJ recognizes that Waller suffers from severe conditions that greatly limit her ability to function. The issue,

11

however, is not whether Waller has physical impairments or experiences symptoms, but whether those impairments and symptoms prevent her from performing the limited range of light jobs identified by the vocational expert. See Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990)) ("An individual does not have to be pain-free in order to be found 'not disabled.'"). The ALJ accounted for the limitations posed by Waller's impairments by limiting her to a range of light work. The ALJ restricted Waller's ability to climb ramps and stairs, balance, crawl, stoop, crouch, climb ladders, ropes and scaffolds, and be exposed to vibration or workplace hazards. R. 15. The RFC determined by the ALJ is consistent with the medical opinions in the record.

It is not the role of this Court to determine whether Waller's testimony was fully credible. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Waller's credibility, and whether the ALJ's decision is supported by substantial evidence. Id. Here, the ALJ's credibility determination is supported by substantial evidence, and should not be disturbed.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Waller's claim for benefits and in determining that her impairments would not significantly limit her physical ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Waller's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

        Enter: February 3, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge