# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ROSEMARY WALLER, *Plaintiff*, v. CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, *Defendant*. | CASE NO. 6:12-cv-00063 ORDER JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 16 and 18), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 22, hereinafter "R&R"), and Plaintiff's Objections to the R&R (docket no. 23). Pursuant to Standing Order 2011 – 17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff timely filed her Objections, obligating the Court to undertake a de novo review of those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). For the following reasons, I will overrule Plaintiff's Objections and adopt the Judge Ballou's R&R in full.

## I. BACKGROUND

On November 18, 2010, Plaintiff Rosemary Waller ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"),

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Under Rule 25(d), Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d).

To receive DIB, Plaintiff must show her disability began before the date she was or will be last insured (here, March 31, 2014), and that the disability existed for twelve continuous months. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

Plaintiff was born on October 2, 1958, and is considered a person closely approaching advanced age under the Act. Administrative Record (hereinafter "R."), at 27, 55; 20 C.F.R. § 404.1563(d). She attended school through the tenth grade. R. 28. Most recently, Plaintiff was employed from May to June 2009 as a production worker, classified as sedentary, unskilled work. R. 39–40; 52. Before that, Plaintiff worked from January 1992 to July 1996 as an order filler, which is light, unskilled work. From June 1996 to December 2008, Plaintiff was employed in semi-skilled work at the sedentary level as a machine operator. R. 39–40; 52.

Plaintiff claims her disability began on June 9, 2009. R. 133–34. Plaintiff suffers from fibromyalgia, degenerative disc disease, and obesity, and additionally complains of knee and foot pain and urinary and fecal incontinence. During the relevant period of disability, Plaintiff has said that she could wake her granddaughter in the morning, prepare meals for her granddaughter, drive her granddaughter to school, feed and let her dogs out of the house, do laundry a few times per week, lightly clean around her house, vacuum, grocery shop for thirty to forty-five minutes once every week or two weeks, attend appointments with her doctors, watch television, read, and lift ten pounds. R. 34–35, 173–79.

### A. The ALJ's Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review, and on March 6, 2012, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Plaintiff's disability claim. R. 10. Counsel representing Plaintiff and a vocational expert both appeared at the hearing. R. 10.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). In this process, the Commissioner asks whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P, Appendix 1, and the impairment meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909; (4) the claimant is able to perform her past relevant work; and (5) the claimant has the residual functional capacity ("RFC") to perform other specified types of work. *Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520).

The claimant has the burden of production and proof in steps one through four. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). If the claimant meets that burden, at step five the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease, fibromyalgia, and obesity. R. 12. He also found she meets the insured status requirements of the Act through March 31, 2014, and did not engage in substantial gainful activity since June 9, 2009. R. 12. However, the ALJ found Plaintiff's impairments, individually or in combination, did not meet or medically equal a listed impairment. R. 14. Instead, the ALJ found Plaintiff had the RFC to perform light work, with occasional balancing,

stooping, kneeling, crouching, crawling, and climbing ramps and stairs, with no climbing of ladders, ropes, and scaffolds, and with avoidance of concentrated exposure to vibration and workplace hazards. R. 15. Plaintiff could return to her past relevant work as a production worker or order filler, the ALJ found, and he concluded that Plaintiff is not disabled. R. 21–22. Plaintiff appealed to this Court after the Appeals Council denied her request for review on September 26, 2012. R. 1–6.

## B. The Summary Judgment Motions

Plaintiff's motion for summary judgment argues that the ALJ failed to properly account for the effects of Plaintiff's obesity on her RFC and other limitations, that the ALJ improperly evaluated the medical evidence in finding some of Plaintiff's other conditions were not severe impairments, and that the ALJ erred in not fully crediting Plaintiff's subjective complaints of pain. Plaintiff notes she is classified under Level III, or "extreme" obesity, by the National Institute of Health. Pl.'s Mot. for Summ. J. 12. According to Plaintiff, "[t]he ALJ failed to explicitly perform any analysis involving obesity. Therefore, the ALJ improperly applied SSR 96-8p and failed to evaluate the functional effects of the claimant's obesity." *Id.* at 13. Plaintiff mainly argues the ALJ did not consider how such obesity would impact her fibromyalgia and degenerative disc impairments, compounding them and causing more pain and limitation than those impairments might otherwise impose. Plaintiff cites various cases noting that an ALJ must consider obesity at step five of the disability analysis, and that an ALJ cannot disregard obesity's effects simply because he or she finds a claimant did not follow treatment recommendations meant to mitigate obesity. *Id.* at 15.

Plaintiff also urges that the ALJ improperly evaluated the medical evidence in finding that Plaintiff's fecal incontinence, diarrhea, urinary incontinence, left knee, and foot impairments

4

are not severe and disabling. Together, these impairments would limit Plaintiff's ability to complete a workday without the interruption of having accidents and running to the bathroom constantly, and with a compromised ability to stand and walk. Pl.'s Mot. for Summ. J. 17–19. Instead, the ALJ should have found Plaintiff disabled because capable of only sedentary work, she argues. Finally, Plaintiff's motion alleges the ALJ erred in not fully crediting Plaintiff's subjective complaints of pain. He only took account of portions of the medical evidence, says Plaintiff, and failed to account for Plaintiff's consistent and well-documented complaints of pain throughout the medical record, which are supported by the medical evidence. *Id.* at 20–22.

The Commissioner's motion for summary judgment counters that the ALJ specifically considered Plaintiff's obesity and its overall effect when combined with her other impairments. The ALJ explicitly noted Plaintiff's obesity, cited the rule requiring him to consider it, and expressly considered the opinions of physicians who had diagnosed Plaintiff with obesity. Def.'s Mot. for Summ. J. 11–12. Those same physicians "nonetheless concluded that Plaintiff could sit for six hours, stand/walk for six hours, and lift up to 20 pounds occasionally and 10 pounds frequently, with certain postural limitations." *Id.* at 12 (citing Tr. 49–51, 61–62). Therefore, the ALJ took full account of obesity's effect, alone and in combination with Plaintiff's other impairments, and substantial evidence supports his disability determination.

The ALJ also properly found that both Plaintiff's fecal and urinary incontinence and her foot and knee impairments imposed only minimal limitations on her ability to perform work activities. The Commissioner points out that the ALJ considered these limitations minimal because Plaintiff sought only limited medical attention with large gaps in between appointments, and because medical scans and diagnoses revealed only minimal issues that were treatable through conservative methods. Def.'s Mot. for Summ. J. 12–16. All this suggested to the ALJ

that these impairments did not require significant follow up or intensive treatment.. Additionally, in December 2011 Dr. Leong, Plaintiff's treating physician, found her to be in relatively good condition even though she complained of foot and knee pain. *Id.* at 15–16. In January 2012, Plaintiff told a physician she had "no complaints of urinary incontinence or significant diarrhea." *Id.* at 13. Finally, the ALJ considered that no physician suggested Plaintiff had a more limited functional capacity than her RFC assigned her. *Id.* at 16. The ALJ specifically discussed this treatment history at length in his opinion, and the Commissioner argues his findings that these impairments imposed only minimal limitations are supported by substantial evidence.

Finally, the Commissioner argues the ALJ's decision to only partially credit Plaintiff's subjective complaints of pain is supported by substantial evidence and should not be disturbed. The Fourth Circuit has instructed that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The ALJ's finding that Plaintiff was not more functionally limited than her RFC rested upon a determination of her credibility that was fully supported by the objective medical evidence. Her limited treatment history, lack of follow up on many conditions, minor diagnoses and conservative treatments, and her ability to perform a great many household chores all suggested she was not completely debilitated by her impairments, the Commissioner argues. Therefore, the ALJ's credibility determination should not be disturbed by this Court.

### C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment, and granting the Commissioner's motion. In his R&R, the Judge Ballou addressed

each of Plaintiff's contentions, as noted above. He found that substantial evidence supports the ALJ's decision finding Plaintiff not disabled.

Judge Ballou acknowledged an ALJ's responsibility to consider the combined effects of obesity with other impairments, and an ALJ's prerogative to rely on and adopt conclusions from doctors and medical records that accounted for Plaintiff's obesity. R&R 5. Judge Ballou found the ALJ properly accounted for Plaintiff's obesity and its effect on her other limitations and functional capacity. Judge Ballou observed that the ALJ had specifically considered the cumulative effect of Plaintiff's obesity. None of Plaintiff's physicians found her more limited than the ALJ's RFC determination, and the ALJ found Plaintiff's obesity and other limitations only went so far as to limit her "mobility, ability to lift and carry heavy objects, ability to perform postural activities continuously, and ability to work in certain environments." R&R 6. The ALJ properly accounted for the limitations imposed by Plaintiff's obesity in imposing restrictions on her ability to perform light work in her RFC. R&R 7.

The R&R also found substantial evidence supports the ALJ's determination that Plaintiff's urinary and fecal incontinence "were not severe because they 'have not required significant follow-up and have not resulted in continuous exertional or non-exertional limitations.'" R&R 8 (quoting R. 13). Likewise, the R&R observes that the ALJ discussed Plaintiff's left knee and foot impairments "at length in evaluating her RFC," the ALJ fully considered the medical evidence of Plaintiff's knee and foot pain, and his imposition of restrictions on Plaintiff's light work sufficiently accounts for those limitations.

Judge Ballou also found substantial evidence supported the ALJ's decision to only partially credit Plaintiff's testimony about her pain. As Judge Ballou recounted, the ALJ found Plaintiff's allegation that her pain was disabling contradicted by "the degree of medical treatment

7

she received, the findings made on examination, and the reports of the reviewing, treating and examining physicians in the record." R&R 10. Treatment records showed "a condition that required conservative treatment and was controlled by medication," including "mild degenerative disc disease in her spine and left knee" that nevertheless left her with a large range of motion and normal gait and muscle strength. R&R 11. Furthermore, Plaintiff's own testimony about her daily activities shows she is not debilitated, Judge Ballou found. Altogether, Judge Ballou found the ALJ's assessment that Plaintiff's pain only limits her to certain light jobs with restrictions to be substantially supported by the evidence. R&R 12.

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 555 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id*.

8

(quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig*, 76 F.3d at 589.

## III. DISCUSSION

### A. The ALJ's Evaluation of Plaintiff's Obesity

Plaintiff's objections repeat her arguments from her motion for summary judgment that Plaintiff faces more severe limitations on her ability to sit and stand than are accounted for by her RFC, primarily because the ALJ allegedly failed to consider the additional effects of her obesity on her ability to function. Objections to the R&R ¶ 3. Plaintiff also quibbles with how the R&R explicates certain case law relevant to obesity.[2]

Plaintiff ignores that the ALJ expressly noted her obesity at steps two, three, and four of the disability determination, ultimately finding it a severe impairment. R. 12, 14, 15, 18. At step three, the ALJ explicitly explained the process of evaluating Plaintiff's obesity and noted he had considered its cumulative effects on her other impairments:

> The claimant's obesity does not fall within a specific listing, but must be evaluated in conjunction with other related conditions, such as musculoskeletal, respiratory, or cardiovascular impairments, pursuant to SSR 02-1p. Since obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listed impairment, *the cumulative effects of obesity have also been considered. However, even with*

---

[2] As the R&R properly found, none of this case law proves applicable to Plaintiff's circumstances, and therefore I need not discuss it here.

9

> *this consideration, the evidence fails to meet the requirements of any listed impairment.*

R. 14 (emphasis added). Next, in determining Plaintiff's RFC at step four of the analysis, the ALJ discussed her medical history, evidence, and testimony about her limitations at length. The ALJ accounted for Plaintiff's own testimony about her pain and limitations, along with her description of her fairly extensive daily activities. R. 15–16. He discussed diagnoses by physicians who also diagnosed Plaintiff with obesity, and their conservative treatment and findings that she maintained a good range of motion and muscle strength. R. 16–19.

The ALJ adequately accounted for the effect of Plaintiff's obesity on her other limitations, and on her functional capacity. As this Court has stated before, an intensive, lengthy analysis of obesity is not required. *See Greenway v. Astrue*, No. 6:12-CV-00005, 2013 WL 4929931, at *7 (W.D. Va. Sept. 12, 2013); R&R 5. An ALJ must consider the cumulative effects of obesity and any other impairments, as the ALJ did in this case. *See Greenway*, 2013 WL 4929931, at *6–7. An ALJ may also rely upon medical records that adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of a claimant's obesity. *Id. See also* R&R 5. To prevail on appeal to this Court, Plaintiff also must point out functional limitations related to her obesity that the ALJ's RFC did not properly consider. *See Richards v. Astrue*, No. 6:111-cv-00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012).

Plaintiff attempts to argue that the ALJ did not fully consider limitations imposed by her obesity because he did not account for the amount that her obesity additionally inhibits her ability to stand, walk, and even perform light work. This argument proves unavailing. The ALJ explicitly noted he was considering the cumulative effect of her obesity on her other limitations and on her functional capacity. He also considered many medical opinions, including the diagnoses and assessments of Plaintiff's treating physicians and the recommendations of

10

vocational experts and state physicians. As the ALJ noted, none of these opinions ever suggested Plaintiff's functional capacity was more limited than her RFC prescribed – instead, they suggested Plaintiff could indeed perform light work with the restrictions imposed by the ALJ.

These medical opinions were formed with the explicit acknowledgement of Plaintiff's obesity. The physicians who evaluated her did not ignore that fact in: (1) prescribing conservative therapies such as steroid injections, prescription and over-the-counter medications for pain management, stretching exercises, an OTC orthotic for her foot, referrals, and follow-up testing recommendations; (2) in never recommending surgery; and (3) as late as December 2011, in finding Plaintiff had "a coordinated and smooth gait; full range of motion in all joints; no muscle atrophy; no musculoskeletal misalignment, deficits, deformities; and no neurological abnormalities." R. 16–19.

Plaintiff's own actions also suggested her limitations were not debilitating, as the ALJ noted. From her persistent habit of ceasing her medications, not following up with prescribed testing and treatment such as physical therapy, the large gaps between appointments, and Plaintiff's daily activities, the ALJ drew upon substantial evidence that Plaintiff's limitations did not restrict her from performing light work, with certain restrictions. Plaintiff reported that her daily activities included waking her granddaughter in the morning, preparing meals for her granddaughter, driving her granddaughter to school, feeding and letting her dogs out of the house, doing laundry a few times per week, lightly cleaning around her house, vacuuming, grocery shopping for thirty to forty-five minutes once every week or two weeks, attending appointments with her doctors, watching television, reading, and lifting ten pounds. R. 34–35, 173–79. These activities are consistent with an RFC that confines Plaintiff to light work, with

the caveat that she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and could not climb ladders, ropes, and scaffolds, and that she should avoid concentrated exposure to vibration and workplace hazards. R. 15. I find that substantial evidence supports the ALJ's RFC, and that he properly considered the effects of her obesity in coming to his conclusions.

### B. The ALJ's Findings Regarding Plaintiff's Incontinence, Foot, and Knee Conditions

Plaintiff objects that both the R&R and the ALJ erroneously concluded that her fecal and urinary incontinence, and her knee and foot injuries, were not severe impairments. Objections to the R&R ¶ 4. Plaintiff recites the medical evidence documenting these impairments and notes her testimony that she "has accidents and has to race to the bathroom 5 to 6 times per day." *Id.* The objections also point out diagnoses of the worsening condition of her left foot and left knee, such that in November 2011 she needed help getting out her vehicle at the doctor's office, was wheelchair bound, and had to forego a steroid injection due to knee pain. *Id.*

An impairment is not severe under the Act and its regulations, and therefore does not result in a finding of disability, if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities," defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521; 20 C.F.R. § 404.1520. An impairment must either be expected to result in death, or must have lasted or be expected to last for twelve continuous months to be considered severe. *See* 20 C.F.R. § 404.1509. As the R&R recognized, a claimant has the burden to prove a given impairment or combination of impairments are severe under the Act. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Additionally, "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

12

irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

As the R&R recounts, Plaintiff's medical history regarding incontinence proves mixed. Although doctors found a small hiatal hernia and evidence of gastritis and duodenitis in April 2011, Plaintiff's colonoscopy returned normal results. R. 334–35. In response, gastroenterologist Vikas Chitnavis, M.D., prescribed only Kegel exercises and weight loss. R. 335. By June 2011, doctors referred Plaintiff for further studies of her gastrointestinal tracts and prescribed Colsetid. R. 332. Nothing indicates Plaintiff followed up with those studies, nor that she was treated again for gastrointestinal complaints. Likewise, the record contains minimal evidence of either complaints or treatment for urinary incontinence: Plaintiff complained about it in November 2009 and December 2010, and changed medications in December 2010. R. 357, 363. Given this minimal evidence of impairment, Plaintiff's failure to follow up with testing, and the minor duration and number of complaints about incontinence, substantial evidence supports the ALJ's determination that these impairments are not "severe" under the Act.

Regarding her knee and foot impairments, Plaintiff received fairly conservative treatment and by December of 2011 appeared to operate well within her RFC. Plaintiff first began complaining of knee pain in January 2010 and was prescribed Mobic by her primary care physician, Dr. Leong. R. 17. She returned with complaints of knee pain in October 2010 and received a diagnosis of possible osteoarthritis versus degenerative internal derangement of the left knee. Dr. Torre, to whom Plaintiff had been referred, scheduled her for a knee x-ray and gave her a steroid injection. R. 17. It is unclear whether that x-ray took place.

Almost a year later, Plaintiff complained of knee and heel pain to Dr. Leong, her primary care physician. He took an x-ray of her knee, revealing "narrowing of both medial and lateral

joint compartment as well as some osteophyte formation." R. 19. Dr. Leong prescribed Mobic and referred Plaintiff to podiatry. R. 19. At podiatry, Dr. Wilhems found no swelling, erythema, warmth, or pain in range of motion examination; no tenderness to palpation in the affected area; no pain in the anterior leg; and no neurological defects. R. 19. Dr. Wilhems diagnosed her with plantar fasciitis/mechanical heel pain syndrome with compensatory posterior tibial tendinitis and anterior tendinitis. R. 19. His treatment was fairly conservative: he prescribed Plaintiff an over-the-counter "semi-rigid Super Feet orthotic" and continued her on Meloxicam. R. 19.

In late July 2011, Plaintiff continued to report pain, but there was no change from her previous examination. She received a Lidocaine and Celestone Slouspan injection and was advised to continue using the orthotics and follow up in three weeks. R. 19. Without evidence of such follow up, the record does show Plaintiff visited a different doctor several months later, in October 2011. X-rays were consistent with knee arthritis, and Dr. Carr advised Plaintiff to lose weight and scheduled her for an injection. She received a different injection than prescribed in November 2011 after Plaintiff arrived at her initial appointment in too much pain for the prescribed injection – she arrived in a wheelchair after being assisted out of her vehicle. R. 354; Objections to R&R 4. Finally, in December 2011 Plaintiff's primary care physician, Dr. Leong, noted that while Plaintiff still complained of knee and foot pain, she "had a coordinated and smooth gait; full range of motion in all joints; no muscle atrophy; no musculoskeletal misalignment, defects, or deformities; and no neurological abnormalities." R. 19.

Plaintiff's treatment history consists of fairly minor diagnoses of osteoarthritis, plantar fasciitis, and tendinitis, among other things, treated with prescription medication, over-the-counter orthotics, and bi-annual steroid injections. By December 2011, Plaintiff's examination by her primary care physician showed a good range of movement and walking ability, although

she still subjectively complained of pain. I find that substantial evidence supports the ALJ's conclusion that her foot and knee impairments were not "severe" under the Act.

I find the ALJ properly considered all of the evidence at issue and that substantial evidence supports his determination that none of these limitations (fecal and urinary incontinence, knee and foot injuries) constitute severe impairments under the Act.

### C. The ALJ's Credibility Assessment

Plaintiff also contends Judge Ballou erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning her limitations were not fully credible and are inconsistent with the medical evidence on record. Plaintiff claims the ALJ only relied on portions of the available evidence, and that the evidence as a whole supports Plaintiff's testimony about the severity of her pain and her limitations. Objections to R&R ¶ 5. It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.*

The ALJ determines whether a claimant is disabled by a two-step process. *Id.* at 594; *see* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] her ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider

all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Id.* at *4.

Substantial evidence supports the ALJ's finding that Plaintiff's limitations match her RFC, and that her statements of debilitating pain are only credible to the extent they correspond with her RFC. R. 19–20. As discussed thoroughly throughout this opinion, and as the ALJ properly found, the record reflects "relatively routine and fairly conservative" treatment, with "gaps in treatment" evident throughout. R. 20. Plaintiff testified that she "suffers from debilitating back and knee pain and cannot walk, stand, or sit more than a few minutes," that "when she sits up, her legs go numb," that "her medications make her tired," that she suffers from "severe muscle spasms" and "has arm and leg pain due to fibromyalgia," along with "left knee and foot pain" and "shoulder pain," and that her incontinence forces her to have accidents and to run to the bathroom five to six times per day. R. 15–16, 20.

Nevertheless, substantial evidence shows that Plaintiff's testimony about the severity of her pain and limitations is not supported by either her daily activities or her medical record. On a daily basis, she woke and fed her granddaughter before taking her to school each morning, fed and cared for her dogs, did laundry several times per week, lightly cleaned around her house (including vacuuming), grocery shopped once every week or two, attended doctor appointments, watched television, read, and lifted ten pounds. R. 34–35, 173–79. The medical record, as the ALJ acknowledged, shows limited testing and minor diagnoses, treated mostly through occassional steroid injections, prescription and over-the-counter medications, and

16

recommendations for weight loss, stretching, and physical therapy. Plaintiff did not always follow up on recommendations for further testing and treatment, validating the ALJ's inference that her impairments were not as severe as she claimed. I have considered all the medical evidence on record and I find that: (1) the ALJ properly considered all the evidence on record; and (2) substantial evidence supports his decision to accord Plaintiff's testimony about her pain and limitations only partial credit.

## IV. Conclusion

After undertaking a de novo review of those portions of the R&R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an order overruling Plaintiff's Objections, adopting the Magistrate Judge's R&R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing and striking this action from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this 24th day of March, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE